Dore, J.
After trial at Special Term the trial court enjoined defendants, except Metropolitan Life Insurance Company, under plaintiff’s first cause of action, (1) from making a new mortgage on the property of defendant Textile Realty Corporation unless the mortgage required application of the corporation’s net income to retirement of the obligation secured; and (2) from declaring or paying any dividend on the corporation’s preferred stock until retirement of the entire obligation secured by the proposed mortgage; and the court dismissed plaintiff’s second cause of action brought derivatively on the ground that defendants did not act in bad faith. Defendants (except Weinfeld) appeal from the judgment insofar as it enjoins them; plaintiff appeals insofar as the judgment dismissed its second cause of action.
The entire court is in agreement that the evidence supports the trial court’s finding that plaintiff’s second cause of action should be dismissed. A majority of the court, on defendants’ appeal, holds that the judgment so far as appealed from should be reversed and the first cause of action also dismissed.
Intelligent comprehension of the relations of the parties, and the relevant clauses of the controlling documents, essential for disposition of the appeals and decisive of the issues, requires at the outset a summary of the background of this controversy.
Defendant Textile Realty Corporation (hereinafter “ Textile ”), organized in a Burchill Act proceeding (Real Property Law, § 122), owns the land and sixteen-story store, office and showroom building at 295 5th Avenue, the entire 5th Avenue blockfront from 30th to 31st Streets, borough of Manhattan, city of New York. The individual defendants are all'directors and officers of Textile and all the voting trustees of its stock under a voting trust agreement. Defendant Metropolitan is the *373 proposed mortgagee under a refinancing challenged by plaintiff.
The Textile building was built in 1921, and owned from that time until 1942, by Textile Properties, Inc., the common shares of which were owned by the same persons, the Backer interests, who own this plaintiff’s common stock. Theodore Backer, plaintiff’s president, testified that the cost of land and building was $4,980,000; that in 1928, the then owners of the building, also Backer interests, did public financing consisting of floating $7,350,000 6% first mortgage bonds and $2,400,000 7% general mortgage bonds; that the 6% first mortgage bonds remained outstanding until 1935, when the owner went into a first reorganization proceeding under a plan that left the bonds in a slightly reduced amount still outstanding at the time of the second reorganization under the Burchill Act initiated in 1942; and that the stockholders of Textile Properties Inc. (the former defaulting owner) and this plaintiff, George Backer, Inc., were the same persons or the same interests.
The first reorganization in 1935, was a 77B bankruptcy proceeding (U. S. Code [1934 ed.], tit. 11, § 207) in the Federal court caused by the former owner’s default in a payment of interest of the then outstanding bonds. The second reorganization, the Burchill Act proceeding, was similarly caused by another default of the same owner in meeting payments on the bonds. It was begun by an action to foreclose a mortgage of $6,852,000 for such default. Defendant Textile was organized under the Burchill Act proceeding pursuant to a plan of reorganization approved by the Supreme Court and, on appeal by a small percentage of bondholders, by this court (New York Trust Co. v. Textile Properties, Inc., 268 App. Div. 765).
Under the plan thus approved, holders of the $6,852,000 in principal amount of the 6% first mortgage bonds of the former owner, Textile Properties, Inc., received for each $1,000 of principal of the old bonds $600 in principal amount of 6% (4% fixed and 2% income) bonds of defendant Textile, the new company, and also six shares ($400 redemption value) of Textile’s preferred stock and six shares of its class A common stock. Thus the old bondholders received under the plan only 60% of their original principal investment in new bonds and for the remaining 40%, preferred stock and class A common for whatever it might be worth. The whole purpose of the reorganization was to enable the public bondholders to recoup as much of their investment as possible. By the refunding now proposed, these bonds (at trial outstanding in the sum of $3,425,000) would *374 all be paid off by a new $3,500,000 mortgage loan on the property of Textile furnished by defendant Metropolitan Life Insurance Company.
The documents constituting the plan approved by the court in 1944, included:
(1) a mortgage securing the issue of the bonds, then in the principal sum of $4,111,500 (but now reduced to $3,425,000) maturing September 1, 1959, with interest at 6%;
(2) Textile’s certificate of incorporation which provides for (a) 41,115 shares of preferred stock entitled after payment of the bonds to cumulative dividends, (b) 41,115 shares of class A common stock, (c) 41,115 shares of class B common;
(3) a voting trust agreement of which the individual defendants are voting trustees;
(4) a management agreement retaining plaintiff for ten years as real estate managing agent of the building with compensation at the usual real estate management commission rates and, in addition, issuance annually to plaintiff of a certain number of shares of class B common stock provided the net earnings of Textile were $250,000 annually. As the earnings have been in that amount annually since the management agreement of 1944, plaintiff has procured and at trial owned 12,334 shares of class B common stock.
The plan also provided that it is the bonds that “ shall be entitled to the benefit of a sinking fund ” to which payment shall be made of “ the balance of Available Net Income ” of Textile and the funds therein ‘ ‘ shall be applied by the Trustee to the purchase of the Bonds, from time to time.”
Under the plan the holders of preferred stock are entitled to vote at the rate of two votes for each share and class A common at one vote for each share but as to class B the plan provides: ‘6 The holders of Class B Common Stock shall not be entitled to vote on any corporate matters under any circumstances, including, but without limiting the generality of the foregoing, a sale of the Mortgaged Property even should such sale render such Class B Common Stock valueless, until after all the Bonds and the Preferred Stock shall have been retired. ’ ’
The bonds, preferred stock and class A common were transferable only as a unit except to the extent that bonds were purchased or redeemed by the indenture trustee. No dividends could be paid with respect to common stock, class A or class B, until all preferred, principal and interest, had been redeemed.
Plaintiff is the only class B common stockholder. There are approximately 1,600 holders of Textile’s other securities.
*375 When the management agreement was originally submitted to Special Term at the time of the reorganization, the Special Term entertained a serious doubt as to whether it was expedient to permit interests representing the defaulting owner to acquire an interest in the new corporation by virtue of a management contract “ without contributing in money or money’s worth in the new corporate owner of the property ”, although twice the valuation would have to be realized before the common stock would have any share in the equity. In a subsequent opinion, the same court before approving the plan noted that the representatives of plaintiff consented to elimination of all voting rights on its part11 until the new bonds and the preferred stock are fully paid or retired.”
The trial court did not hold that the refinancing as such was illegal or improper, and enjoined it only to the extent of requiring application of the corporation’s net income to retirement of the new mortgage as now provided in the existing indenture, and also prohibited declaration or payment of any dividend on the preferred stock until retirement of the obligation to be secured by the mortgage.
Plaintiff contends that the proposed refinancing is in violation of provisions of the plan and other documents, part thereof, in which plaintiff has acquired contractual and equitable rights. Essentially plaintiff relies on the provisions of the plan requiring that all of Textile’s net earnings be used to retire the first mortgage and that dividends on the preferred stock should not be paid or accumulated while the first mortgage is outstanding. In brief, plaintiff contends it has legal and equitable rights to prevent any mortgage refinancing that does not contain the above provisions of the original mortgage, part of the plan. On elaborate mathematical calculations and forecasts, plaintiff urges the adverse effect of any financing such as the one here proposed on plaintiff’s “ equity ” evidenced by the class B common stock it now holds.
Thus the trial court and plaintiff rely on provisions of the indenture forbidding declaration or payment or any accumulation of dividends on the preferred stock and requiring all available income to be paid in the reduction of the mortgage, thus enhancing, as the court said, the value of Textile’s equity in the property, and the court held that, if income instead of being thus applied to reduction of the mortgage is paid or accumulated as dividends for the preferred shareholders, such payment will injure the equity represented by the class B common stock owned by plaintiff.
*376 Plaintiff also contends that the refunding is a modification of the plan which could only be allowed on application to the court which approved it and no such application was made. Plaintiff further relies on certain provisions of the indenture requiring the consent of certain percentages in principal amount of bonds or the approval of the court for certain types of refinancing, and says that neither such consent nor court approval was procured.
We think complete answers to these and all other of plaintiff’s contentions as well as to the court’s conclusions appealed from by defendants, are found in the clear and unambiguous relevant provisions of the plan and its supporting documents. The plan approved by the court expressly provides: “ This Plan is based upon the belief that the Mortgaged Property and all rents and profits therefrom rightfully belong to the holders of Old Bonds to the exclusion of all other creditors and stockholders of the Old Company and that, accordingly, any plan of reorganization with respect thereto should provide only, for the holders of Old Bonds ”.
Plaintiff’s management contract expressly provides: “22. This agreement shall in all respects be subject and subordinate to the Indenture, dated September 1, 1944, between the Owner [.Textile] and The New York Trust Company, as Trustee, and any instruments or indentures which may hereafter be executed by the Owner under the provisions thereof.”
The mortgage indenture provides:
‘1 ARTICLE XXI — Miscellaneous Provisions
“ Section 1. All the provisions hereof shall be held to be for the sole and exclusive benefit of the parties hereto and their successors and of the holders of bonds.”
The plan of reorganization provides: “ All or less than all the Bonds shall be subject to redemption, at any time or from time to time, at the option of the New Company, * * *.”
The Trust Indenture under which the bonds were issued also provides: “ Section 1. All or less than all of the Bonds may, at the option of the Company to be evidenced by a copy of a resolution of its Board of Directors delivered to the Trustee, be redeemed * * * at any time or from time to time, * * * ” (The italics in each clause are added.)
These provisions and the whole purpose of the plan destroy plaintiff’s claim that it has a contractual right to prohibit the refinancing planned by the company and its board of directors, exercising its best judgment and acting, as the trial court found, in good faith.
*377 The plan that plaintiff relies on sets forth as its fundamental basis that it should provide only for the holders of the old bonds to the exclusion of stockholders of the old company, and concededly this plaintiff represents the same interest as those stockholders. Plaintiff’s contentions and the trial court’s holding appealed from by defendants assume as a major premise that any new bonds issued on refinancing must be retired only out of Textile’s earnings and in no other way, and that plaintiff has a vested right in the maintenance of such status quo. There is nothing in the plan or certificate or the indenture that so provides. The contrary is true. As above shown, both the plan and the indenture expressly permit redemption of all the bonds at any time provided they are paid in full, principal and interest. That is precisely what the proposed financing does. The certificate of incorporation expressly provides that when such bonds have been paid in full, dividends may be paid or accumulated on the preferred stock. The plan has not been modified or altered but so far as plaintiff is concerned has been followed according to its express terms and purposes.
On reaching contrary conclusions we think the learned trial court failed to give proper consideration to the fact that plaintiff was not a party to the indenture and that, as above shown, the indenture itself expressly provides that “ all ” its provisions ‘ ‘ shall be * * * for the sole and exclusive benefit of the parties hereto and their successors and of the holders of bonds.” Plaintiff, not a party to the indenture, can derive no contractual rights therefrom. The indenture is solely for the benefit of the bondholders. Plaintiff neither as real estate agent nor as holder of class B common stock can take advantage thereof. The certificate of incorporation setting forth the cumulative rights of preferred stockholders, must be construed as it is written, and it is written so as to cause preferred shares to be cumulative as soon as the present bonds are retired from whatever source. The management contract on which plaintiff relies by its very terms was expressly subordinate to the indenture.
The plan approved by the court provides that all the bonds may be redeemed at any time “ at the option of the New Company ” [defendant Textile]. The indenture also expressly so provides. The proposed refunding would pay off all the bonds of the company and thus insure the bondholders immediate payment of 60% of the original investment.
Plaintiff represents the same interests as the defaulting owner whose default brought about the reorganization. It should be *378 clear that if the defaulting owner at the time of the reorganization insisted upon a clause in the plan or certificate that it should have priority over the preferred stockholders whose preferred stock was the sole hope of recouping 40% of the original bondholders’ investment, the court would never have approved such clause. The whole object of the Bur chill reorganization proceedings was primarily to secure protection to the greatest possible extent of the public bondholders for their large investment in the property threatened by the default of the owner. The bonds were security for only 60%. The preferred stock was meant to be some security for the balance of 40%. Plaintiff admits that to retire the bonds, funds could be obtained by the sale of the property, which at the highest price offered would wipe out all common stock.
The plan and the indenture provisions requiring the use of net income to reduce the existing bonds was inserted not for the benefit of plaintiff or class B stockholders but solely for the benefit of the bondholders to make sure that any surplus earnings over and above interest requirements would be used to repay them. Plaintiff is not suing as a bondholder but represents the same interests as the defaulting owner.
The directors and trustees in view of the sole purpose of the plan of reorganization doubtless sought to carry out its dominant aim and give the bondholders an opportunity now to get back at least 60% of the original investment and begin to make some provision for securing some part at least of the 40% that had been wiped out by the owner’s default.
We find no basis in the documents or the proof that the proposed acts of defendants are clearly inequitable to plaintiff or that plaintiff has a contractual right to insist that Textile’s available net income be used to retire the obligation of any new mortgage or that the proposed refinancing will breach any contractual obligation owing to plaintiff.
The trial court properly held that the directors were acting in good faith and the record sustains that conclusion. The interest rate payable by the corporation upon its bonds would be reduced from 6% to 3%%, a substantial saving in interest. The court properly found that refinancing could be undertaken. Whether the proposed refinancing would be better for the corporation was on the facts disclosed a matter of business judgment with which the court in the absence of fraud or bad faith should not interfere (Rathbone v. Ayer, 196 N. Y. 503).
The authorities relied upon by plaintiff with regard to “ favoring ” one class of stockholders against another class *379 are, by reason of facts and the express terms of the plan, indenture and certificate, not here controlling. The class here claimed to be “ favored ” constitutes all of Textile’s cash investors who put $6,800,000 into the property. The other class is plaintiff whose class B stock represents no cash investment in the property and was made expressly subordinate to the securities issued to Textile’s investors.
Before determining on the refinancing here attacked, the defendants, officers and directors took a vote of the bondholders to determine whether they wished the bonds retired and paid off. Holders of $1,608,400 of bonds voted in favor of the proposed refinancing program, holders of $609,400 voted against, and of this latter amount, $334,200 was owned by the Backer interests who own or are friendly to plaintiff. Plaintiff not a party to the indenture may not rely on its provisions requiring consent of certain percentages of the bondholders or court approval to certain types of refinancing, as such provisions were for the protection of the bondholders in whose right plaintiff does not sue.
The trial court properly dismissed the cause of action as against defendant Metropolitan Life Insurance Company.
On the basis of the whole record we think the judgment so far as appealed from by defendants-appellants should be reversed and the first cause of action also dismissed.
The judgment so far as appealed from by plaintiff dismissing the second cause of action should be affirmed; and on the appeal by defendants-appellants the entire complaint should be dismissed, with costs to defendants-appellants. Findings of fact and conclusions of law inconsistent with this opinion and decision should be reversed and contrary findings and conclusions made.
Callahan and Van Voorhis, JJ., concur; Cohn and Shientag, JJ., dissent and vote to affirm on the opinion of Mr. Justice Sohreiber at Special Term for trials. (195 Misc. 297.)
Judgment so far as appealed from by defendants-appellants reversed and the first cause of action dismissed; judgment, so far as appealed from by plaintiff dismissing the second cause of action, affirmed; on the appeal by the defendants-appellants the entire complaint is dismissed, with costs to the defendants-appellants. Findings of fact and conclusions of law inconsistent with this opinion and decision are reversed and contrary findings and conclusions made. Settle order on notice.